JS-6 / REMAND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ORANGE COUNTY NURSERY INC., a California corporation<br>                Debtor.<br>ORANGE COUNTY NURSERY, INC., a California corporation<br>                Appellant,<br>     v.<br>THE MINORITY VOTING TRUST, DAVID F. VEYNA, CARMEN VEYNA, AND ANNA M. ZANKEL, TRUSTEES<br>                Appellees. | Case No. CV 13-06131 DMG<br>Bankruptcy Case No. 1:09-bk-22100-GM<br>**ORDER RE BANKRUPTCY APPEAL** |

      This matter is before the Court on appeal from the Bankruptcy Court's November 15, 2012 and July 17, 2013 orders holding that the Minority Voting Trust's claim is not subject to subordination under 11 U.S.C. § 510(b). [Doc. # 16, Exhs. 1-4.] The Court deems this matter suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 8012-7. Having duly considered the parties' written submissions, the

Court now renders its decision. For the reasons set forth below, the judgment of the Bankruptcy Court is **REVERSED**.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court previously set forth the factual and procedural history of this case in its October 12, 2010 order. *See In re: Orange County Nursery, Inc.*, 439 B.R. 144 (C.D. Cal. 2010). The Court recites here only the facts pertaining to this appeal and the procedural background since its prior order.

Orange County Nursery Inc., ("OCN") is a closely held corporation run by the Veyna family. Its shareholders consist of the Minority Voting Trust, which holds 40.25% of OCN's stock, and the Majority Voting Trust, which holds the remainder. (*Id.* at 146.) On August 4, 2006, the Minority filed suit in Orange County Superior Court for OCN's dissolution under California Corporations Code sections 1800(b)(4) and 1800(b)(5).[1] *Id.* On June 29, 2007, OCN[2] notified the Superior Court of its election under California Corporations Code section 2000 to purchase the Minority's stock.[3] *Id.* at 147. On July

---

[1] Section 1800(b)(4) provides: "Those in control of the corporation have been guilty of or have knowingly countenanced persistent and pervasive fraud, mismanagement or abuse of authority or persistent unfairness toward any shareholders or its property is being misapplied or wasted by its directors or officers."

Section 1800(b)(5) provides: "In the case of any corporation with 35 or fewer shareholders (determined as provided in Section 605), liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder or shareholders."

[2] The Court refers to the Majority and the corporation as "OCN" for consistency with its prior orders.

[3] California Corporations Code section 2000 provides that "in any suit for involuntary dissolution," the majority shareholders "may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the [minority shareholder plaintiffs] at their fair value." Cal. Corp. Code § 2000(a). If the majority shareholders elect to purchase the shares owned by the minority shareholder plaintiffs but the parties are unable to agree upon the fair

27, 2007, the parties stipulated that OCN would purchase the Minority's shares in exchange for a stay of the Minority's suit, and the Court adopted the stipulation. (*Id.*) On November 21, 2008, the Superior Court entered a decree confirming an appraiser's value of OCN as of August 4, 2006. (*Id.*) The decree ordered OCN to pay the Minority the value of their shares, plus interest, by December 15, 2008, and provided that upon receipt of payment, the Minority would transfer its shares to OCN. (*Id.*)[4] In the event that OCN failed to pay the Minority by the deadline, the decree ordered that OCN would be liquidated and dissolved, with judgment to be entered against OCN for all expenses and attorneys' fees incurred by the Minority. (*Id.*)

OCN appealed the Superior Court's order and requested a stay, which was denied. The Court of Appeal, however, extended OCN's payment deadline until January 22, 2009 at 4:00 p.m. (*Id.* at 147-48.)

On January 22, 2009, at 1:57p.m., OCN filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. (*Id.* at 148.) The Minority subsequently filed a proof of claim, asserting its entitlement to a liquidated total of $6,008,424.75, consisting of the $5,249,928, per the Superior Court order, plus attorneys' fees. *Id.*

---

value of the shares, the court, upon application by the majority shareholders, "shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the [plaintiffs'] shares."  § 2000(b).  To determine the shares' fair value, the court appoints three disinterested appraisers, whose award, when confirmed by the court, is final and conclusive upon all parties.  The court then enters a decree providing for the "winding up and dissolution of the corporation unless payment is made for the shares within the time specified." *Id*. § 2000(c).  If the majority shareholders "desire to prevent the winding up and dissolution, they shall pay to the [minority shareholder plaintiffs] the value of their shares ascertained and decreed within the time specified . . . , or, in case of an appeal, as fixed on appeal. On receiving such payment or the tender thereof, the [plaintiffs] shall transfer their shares to the [majority shareholders]." § 2000(d)."

[4] The Superior Court Order valued the Minority's equity interest in OCN at $4,906,475 as of August 4, 2006, plus interest to the date of judgment, for a total of $5,249,928. *In re Orange Cnty. Nursery, Inc.*, 439 B.R. 144, 147 (C.D. Cal. 2010).

The Bankruptcy Court held that the Minority had an equity interest through its shares of stock at the time of the bankruptcy petition. *Id.* The Minority appealed that decision to this Court, which reversed the Bankruptcy Court, concluding, in relevant part, that the Minority had a "claim" arising from the Superior Court's decree, as defined by the Bankruptcy Code. (*Id.* at 149-52). This Court reasoned:

> From the moment the Superior Court entered the decree, the Minority had an enforceable right to payment for its shares— either $5,249,928 for their appraised value or, if OCN chose not to tender this amount by the court-imposed deadline, for their actual value upon OCN's forced dissolution.

*Id.* at 152. Because OCN did not make a prepetition payment for the Minority's shares, this Court concluded that "the Minority has a claim for the value of its shares had OCN been dissolved." *Id.* at 152. The Court remanded, noting that "[w]hether the appropriate valuation is the appraised value or some other value is a matter for the Bankruptcy Court to determine in the first instance." *Id.* The order explicitly did not rule on whether the Minority's claim should be subordinated to creditors, clarifying that "the subordination inquiry is distinct from the determination whether a claim should be allowed in the first place." *Id.* at 149 n.6.

OCN appealed the decision, but the Ninth Circuit declined the appeal, holding that it was interlocutory until such time as the Bankruptcy Court valued the Minority's claim at a particular dollar amount and would result in piecemeal litigation and inefficiency. *In re Orange Cnty. Nursery, Inc.*, 472 F. App'x 727, 728 (9th Cir. 2012).

On September 4, 2012, the Bankruptcy Court entered an order holding that 11 U.S.C. § 510(b) mandated subordination of the Minority's claim to the level of common stock. *In re Orange Cnty. Nursery, Inc.*, 479 B.R. 863, 865-68 (Bankr. C.D. Cal. 2012).

On November 15, 2012, after the Minority's motion to reconsider, the Bankruptcy Court reversed course, holding that "the policy rationales of § 510(b) do not support subordination of the Minority's claim to the same priority as common stock." *In re Orange Cnty. Nursery, Inc.*, 484 B.R. 219, 228 (Bankr. C.D. Cal. 2012), *reconsideration denied*, No. 09-22100, 2013 WL 3776320 (Bankr. C.D. Cal. July 17, 2013).

On November 29, 2012, OCN filed a motion for reconsideration of the November 15, 2012 order. After the parties briefed the motion, the Bankruptcy Court ordered an additional round of briefing to address the impact of then recently decided *O'Donnell v. Tristar Esperanza Props., LLC* (*In re Tristar Esperanza Props., LLC*), 488 B.R. 394 (BAP 9th Cir. 2013), on the case at bar. *In re Orange Cnty. Nursery, Inc.*, No. 09-22100, 2013 WL 3776320, *3 (Bankr. C.D. Cal. July 17, 2013). On July 17, 2013, the Bankruptcy Court issued an order denying the motion for reconsideration. *Id.*

OCN now appeals the Bankruptcy Court's November 15, 2012 and July 17, 2013 orders declining to subordinate the Minority's claim under Section 510(b).

## II.
## STANDARD OF REVIEW

A district court reviews a bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code *de novo*. *Greene v. Savage (In re Greene)*, 583 F.3d 614, 618 (9th Cir. 2009) (citing *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir. 2005)). Factual findings are reviewed for clear error. The Court must accept the Bankruptcy Court's factual findings unless, upon review, the Court is left with the definite and firm conviction that the bankruptcy judge has committed a mistake. *Id.* (citing *Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004)).

## III.

## DISCUSSION

The issue on appeal is whether the Bankruptcy Court erred in declining to subordinate the Minority's claim to the level of common stock under Bankruptcy Code Section 510(b), 11 U.S.C. § 510(b), which provides as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

If a court determines that Section 510(b) applies, subordination is mandatory under that section(b). *In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 828 (9th Cir. 2001) (describing subordination under Section 510(b) as "mandatory"); 4 Collier on Bankruptcy (16th ed. rev. 2013) § 510.04[7] ("Under Section 510(b), subordination is mandatory, regardless of the equities of the case.").

**A.     Section 510(b) Applies to the Minority's Claim**

**1.     Text of Section 510(b)**

To determine whether Section 510(b) applies to the Minority's claim, the Court begins with the plain text of the statute. *Lamie v. United States Tr.,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* If the Court concludes that the

statute is ambiguous, it resorts to canons of construction, legislative history, and the statute's purpose to discern Congress's intent. *James v. City of Costa Mesa,* 700 F.3d 394, 399 n. 8 (9th Cir. 2012); *In re SeaQuest Diving, LP*, 579 F.3d 411, 418 (5th Cir. 2009).

In relevant part, Section 510(b) mandates subordination of "a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor . . . [and] for damages arising from the purchase or sale of such a security." This Court previously determined that the Superior Court judgment gives rise to a "claim" within the meaning of the Bankruptcy Code. *See In re Orange Cnty. Nursery, Inc.*, 439 B.R. 144, 149, 152 (C.D. Cal. 2010) (applying 11 U.S.C. § 101(5) and holding "the Minority has a claim for the value of its shares had OCN been dissolved"). The parties do not dispute that the claim is for "damages."[5] Instead, their dispute centers on whether the claim "aris[es] from the purchase or sale of a security." 11 U.S.C. § 510(b).

In the context of Section 510(b), "[w]hat constitutes 'arising from' has been considered and found ambiguous by the Second, Third, Fifth, Ninth, and Tenth Circuits." *Tristar*, 488 B.R. at 401 & 401 n.1 (collecting cases). Thus, in addition to the plain text, the Court also considers whether applying Section 510(b) to the Minority's claim would

---

[5] The term "damages" is not defined by the Bankruptcy Code, but "has a well-understood general definition in the law. It generally means money 'claimed by, or ordered to be paid to, a person as compensation for loss or injury.'" *In re Tristar Esperanza Properties, LLC*, 488 B.R. at 400 (quoting BLACK'S LAW DICTIONARY, 445 (9th ed. 2009)). The Minority does not argue for any other definition of "damages." The Superior Court's order required OCN to pay "either $5,249,928 for their appraised value or, if OCN chose not to tender this amount by the court-imposed deadline, for their actual value upon OCN's forced dissolution." *In re Orange Cnty. Nursery, Inc.*, 439 B.R. 144, 152 (C.D. Cal. 2010). Given that this was a judgment ordering OCN to pay money stemming from the parties' stipulation to resolve the dissolution suit, the Court concludes that the Minority's claim is for damages within the meaning of Section 510(b). *See In re Tristar Esperanza Properties*, LLC, 488 B.R. at 401 (holding that arbitration award enforcing agreement to purchase stock shares was a claim for damages).

"effectuate the intent of Congress." *In re Am. Wagering, Inc.*, 493 F.3d 1067, 1072 (9th Cir. 2007) (looking to both the plain text and the purposes of the statute).

### 2. **The Ninth Circuit's Interpretation of "Arising Under"**

In enacting Section 510(b), Congress "relied heavily" on an article by John J. Slain and Homer Kripke: John J. Slain & Homer Kripke, *The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors*, 4 8 N.Y.U. L.Rev. 261 (1973). *Betacom*, 240 F.3d at 829. In the article, Slain and Kripke explained that the "dissimilar expectations of investors and creditors should be taken into account in setting a standard for mandatory subordination." *Id.* "Shareholders expect to take more risk than creditors in return for the right to participate in firm profits. The creditor only expects repayment of a fixed debt. It is unfair to shift all of the risk to the creditor class since the creditors extend credit in reliance on the cushion of investment provided by the shareholders." *Id.* Based on the legislative history of Section 510(b), the Ninth Circuit has identified "two main rationales for mandatory subordination: (1) the dissimilar risk and return expectations of shareholders and creditors; and (2) the reliance of creditors on the equity cushion provided by shareholder investment." *Id.* at 830.

To effectuate the purposes of Section 510(b), the Ninth Circuit and the majority of other Courts construe the language "arising from" the purchase or sale of a security to include a variety of claims. *Am. Wagering*, 493 F.3d at 1072 ("The majority of courts in recent years that have confronted the scope of § 510(b), including this one, have concluded that the phrase 'arising from' should be read broadly to encompass claims other than fraud claims, such as claims for breach of contract.") Therefore, the Ninth Circuit has held that subordination under Section 510(b) is appropriate where there is "some nexus or causal relationship between the claim and the purchase of the securities." *Id.* (internal quotation marks and citations omitted).

Under Ninth Circuit case law, what matters is the "type of claim possessed," as opposed to the type of claimant. *Betacom*, 240 F.3d at 829 (citing *In re Walnut Equipment Leasing Co.*, 1999 WL 1271762, *6 (Bankr. E.D. Pa. 1999)); *see also Tristar*, 488 B.R. at 404.[6] Therefore, an actual sale or purchase of securities is not required, and physical possession is unnecessary. *Betacom*, 240 F.3d at 829-830; *see also In re SeaQuest Diving, LP*, 579 F.3d at 422. Circuit courts also agree that the "claim" may arise from conduct that post-dates the issuance or sale of securities. *Am. Wagering, Inc.*, 493 F.3d at 1072 (collecting cases).

### 3. Looking Behind the Judgment, The Minority's Claim Seeks to Recover its Equity Interest.

As discussed above, the "type of claim possessed" is the crucial inquiry. *Betacom*, 240 F.3d at 829. Here, looking behind the judgment, the claim is one for the "actual value" of the Minority's shares, arising from OCN's failure to purchase the shares. *In re Orange Cnty. Nursery, Inc.*, 439 B.R. at 152. Looking behind the judgment to the underling claim reveals that the suit was for dissolution based on fraud or mismanagement by OCN, leading to a judgment ordering OCN to purchase the Minority's shares or forcibly dissolve. Essentially, it was a suit to recover the Minority's original equity interest.[7] *In re SeaQuest Diving, LP*, 579 F.3d at 421 ("[T]he fact that

---

[6] The Ninth Circuit treats decisions of the Bankruptcy Appellate Panel ("BAP") as persuasive authority. *See In re Silverman*, 616 F.3d 1001, 1005 (9th Cir. 2010) ("[W]e treat the BAP's decisions as persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the Ninth Circuit."). Therefore, although not controlling, this Court looks to the BAP's decision as persuasive authority.

[7] This conclusion does not conflict with the Court's prior determination that "[t]o the extent the Bankruptcy Court's subsequent orders—including its order adopting OCN's reorganization plan—treat the Minority's interest as equity, these orders will need to be vacated or modified consistent with this Order." *In re Orange Cnty. Nursery, Inc.*, 439 B.R. 144, 152 (C.D. Cal. 2010). In the Court's prior order, the question before the Court was "whether the Minority has a 'claim' arising from the Superior Court's decree, as the Minority maintains, or merely equity in OCN, as the Bankruptcy Court found and OCN contends." *Id.* at 149. The Court determined that the parties had a "claim"—a right to payment—

the claims in the case seek to recover a portion of claimants' equity investment is the most important policy rational." (citing *In re Telegroup, Inc.*, 281 F.3d 133, 142 (3d Cir. 2002)). As the Fifth Circuit observed, the Supreme Court has "looked behind" a state court judgment in interpreting other provisions of the bankruptcy code, and to do so makes sense in the context of Section 510(b). *In re SeaQuest Diving, LP*, 579 F.3d at 423-24 (citing *Archer v. Warner*, 538 U.S. 314, 323, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003); *Brown v. Felsen*, 442 U.S. 127, 138–39, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). Looking behind the judgment prevents claimants from characterizing their claims to avoid the reach of Section 510(b). In *SeaQuest*, four individuals formed a company. After discord ensued, a settlement order, issued before the debtor-member filed for bankruptcy, required the debtor to buy out another owner. The buyout never occurred, and thus the state court entered an order enforcing the settlement. *Id*. at 416. The Fifth Circuit looked behind the state court judgment to determine the nature of the claim and held that Section 510(b) applied. *Id.* at 425-26 (noting that the primary purpose of the settlement agreement was for the debtor to rescind the equity investment). In doing so, it rejected an argument similar to what the Minority argues here, that the state court judgment transformed their claim from one based on equity interest to one based on debt:

---

arising from the Superior Court's decree. *Id.* at 152. As the Court noted, the Bankruptcy Code defines "claim" as "(a) right to payment, *whether or not such right is . . . equitable*." *Id.* at 149 (citing 11 U.S.C. § 101(5) (emphasis added).) This Court also noted that "[t]he subordination inquiry is distinct from the determination whether a claim should be allowed in the first place." *Id.* at 149, n.6.

Here, the Court rejects the argument that the original "equitable nature of the claim" was transformed by the Superior Court's ruling, finding persuasive the view that looking behind the judgment prevents claimants from mischaracterizing their claims to avoid the reach of Section 510(b). *See In re SeaQuest Diving, LP*, 579 F.3d at 423-24, *infra*. But this conclusion does not affect the Court's prior determination that Minority has a "claim" or right to payment as defined by 11 U.S.C. § 101(5)—it simply finds that looking behind that claim for purposes of subordination and avoiding the reach of Section 510(b), the original nature of the claim was equity. *See, Tristar*, 488 B.R. at 397, *infra* (finding the parties had a "claim" for damages—as this Court did in its prior order—that arose from the purchase or sale of security because her original claim sounded in equity).

> We reject S&J's argument that "the equitable nature of a claim is lost once it is converted to a . . . judgment." If the court could not look behind the judgment, then subordination of a rescission or tort claim based on securities fraud (which clearly falls within the purview of § 510(b)) would depend upon whether the claimant obtained a pre-petition judgment on the claim. We doubt that Congress intended such a result, which is contrary to the text and legislative history of the statute. For purposes of § 510(b), a "claim" includes a judgment.

*In re SeaQuest Diving, LP*, 579 F.3d at 423-24.

Similarly, in *Tristar*, the Ninth Circuit BAP faced the question of "whether a judgment debt, based on a confirmed arbitration award enforcing a buy-back provision in the debtor LLC's operating agreement, constitutes a claim 'for damages arising from the purchase or sale of' a 'security' of the debtor." 488 B.R. at 397. The BAP held that it did, applying the Ninth Circuit's "broad interpretation" of Section 510(b) in *Betacom*. *Id.* at 403, 406. The BAP held that the fact that the LLC member had extricated herself from an equity position shortly before the bankruptcy filing did not transform her claim from equity to that of a creditor, citing *Betacom* for the proposition that Section 510(b) does not require a subordinated claimant to be a shareholder, and that what matters is the "type of claim, not the type of claimant." *Id.* at 404 (citing *Betacom*, 240 F.3d at 829).

Accordingly, the Court concludes that the Minority's underlying claim is to recover its equity interest.

### 4. **The Minority's Claim Has a Causal Connection with the Purchase or Sale of a Security.**

The Minority's claim has a causal nexus with the purchase or sale of securities. The Minority has a "claim" for the value of its shares had OCN been dissolved because

OCN failed to purchase the Minority's securities. *In re Orange Cnty. Nursery, Inc.*, 439 B.R. at 152. Therefore, it has a nexus with OCN's failure to purchase the securities. *See In re SeaQuest Diving, LP*, 579 F.3d at 422 (causal relationship between judgment and rescission of purchase of the securities where judgment enforced agreement to buy out other party). That OCN never purchased the shares from the Minority is not dispositive. *Betacom*, 240 F.3d at 830.

### 5. The Policies Underlying Section 510(b) Apply Because the Superior Court Judgment Did Not Transform the Minority's Interest from that of an Investor to that of a Creditor Holding Debt.

Applying controlling Ninth Circuit precedent, and the reasoning of decisions addressing similar facts and interpreting the legislative history behind Section 510(b), the Court concludes that Section 510(b) mandates subordination of the Minority's claim. The Court does not arrive at this conclusion lightly, because the Bankruptcy Judge clearly grappled with this complex issue under the unique circumstances of this case in a nuanced, perceptive, and thoughtful manner.

The Minority argues that the policies behind Section 510(b) no longer apply because their interest has been transformed from equity to debt by the Superior Court judgment. For the reasons stated below, the Court disagrees and holds that the policies apply.

#### a. *Betacom* and *Tristar*

The only Ninth Circuit case to touch upon whether debt would be treated differently than equity under Section 510(b) is *Betacom*, which held that several claims for damages based on a breach of contract were subject to subordination under Section 510(b). 240 F.3d at 831. The Ninth Circuit declined to rule on subordination of related promissory note claims because the lower courts had not addressed the issue, but in remanding stated that "[i]f the promissory note claims are linked to the [breach of

contract], they should be subordinated along with the breach of contract claim." *Id.* at 832. Although *dicta*, this suggests that the Ninth Circuit does not automatically perceive that an equity interest which is reduced to a debt renders Section 510(b) inapplicable, as the Minority argues.

In *Tristar*, the BAP applied Ninth Circuit precedent to analogous facts. It examined a "judgment debt, based on a confirmed arbitration award enforcing a buy-back provision in the debtor's LLC's operating agreement." 488 B.R. at 398. Considering the purposes of Section 510(b), as set forth by the Ninth Circuit in *Betacom*, the BAP held that Section 510(b) applied despite the judgment debt. First, it noted that the claimant, an employee, was an equity holder before she withdrew from the company, and thus she had enjoyed the potential to profit, and did profit, as an equity holder. *Id.* at 403. Second, the BAP presumed that creditors relied on the equity cushion created by investors' capital when they extended credit, because there was no evidence to the contrary, and noted that by withdrawing her investment, the employee "deflated the equity cushion." *Id.*

A close reading of *Betacom* reveals that *Tristar* reasonably applied Ninth Circuit precedent in looking at the expectations of the employee at the time she entered into the investment. The Ninth Circuit reasoned:

> *Before* they receive any stock or extend a line of credit, investors and creditors have different expectations. Even if an investor never receives her promised shares, *she entered into the investment with greater financial expectations than the creditor*. The creditor can only recoup her investment; the investor expects to participate in firm profits.

*Betacom*, 240 F.3d at 830 (emphasis added).

As stockholders, the Minority assumed the risk of OCN's future insolvency, along with the opportunity to benefit, at the time they invested. *Betacom*, 240 F.3d at 829, 331

("Even though the Nugents never received their stock, it remains true that they decided to enter the Merger Agreement with the understanding that they faced the risk that ABS's IPO could fail and that ABS might go bankrupt."). *Betacom* suggests that the proper timing for assessing a claimant's interest is when the investor entered into the transaction, but it does not squarely address the issue before this Court. In *Betacom*, there was no intervening state court judgment before the bankruptcy petition.

*Tristar* and *SeaQuest*, however, both involved a judgment that transformed an equity interest into a fixed amount before the bankruptcy petition was filed. Both courts looked to the expectations of the investors at the time they entered into the agreement and applied Section 510(b) to their claims. *See In re SeaQuest Diving, LP*, 579 F.3d at 422- (citing *In re Med Diversified, Inc.*, 461 F.3d 251, 256 (2d Cir. 2006)); *Tristar*, 488 B.R. at 403. Notably, *SeaQuest* is the only Circuit Court case to address Section 510(b) in an analogous context, and it held that Section 510(b) applied.[8] *SeaQuest*, 579 F.3d at 425 (citing *Betacom* favorably in reaching this conclusion). As discussed above, *SeaQuest* rejected the argument that a judgment erased the equitable nature of a claim, noting that to so hold, claimants could effectively circumvent Section 510(b). *SeaQuest*, 579 F.3d at 424.

Here, the Minority's argument that the purposes of Section 510(b) no longer apply due to the Superior Court order must be rejected. There is no promissory note

---

[8] Finally, decisions by at least two other bankruptcy courts provide persuasive authority for the conclusion that Section 510(b) applies. In *In re Alta+Cast*, 301 B.R. 150 (Bankr. D. Del. 2003), the bankruptcy court held that a judgment did not change the fact that the claim arose from the agreement to sell or purchase stock in a buy-back agreement resulting from an employee's termination. *Id.* at 155. Similarly, in *In re Pre-Press Graphics Co., Inc.*, 307 B.R. 65 (N.D. Ill. 2004), the bankruptcy court held that a claim by a minority shareholder for breach of a stock repurchase agreement was subject to Section 510(b). As is the case here, the underlying claim was for mismanagement by the majority shareholders, and as a remedy, the state court ordered that the majority purchase the minority's stock at an amount valued by a third party. *Id.* at 69. The Court looked behind the judgment, citing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), and held that it was a claim arising from the purchase or sale of a security within the ambit of Section 510(b). *Id.* at 80.

-14-

transforming the equity interest into debt. As this Court previously concluded, because OCN did not pay the appraised amount, the Minority has a claim for the value of its shares upon forced dissolution. The Minority presents no evidence that this amount is capped or fixed in any way. As this Court stated, the claim is for the "actual value" upon dissolution, remanding for a determination of the amount. *In re Orange Cnty. Nursery, Inc.*, 439 B.R. at 152. Therefore, the Court rejects the argument that the Minority's interest is no longer subject to fluctuation and is fixed, like that of a creditor rather than an investor.

As the Bankruptcy Court recognized, at the time OCN filed its bankruptcy petition, the Minority's interest was not fixed. *In re Orange Cnty. Nursery, Inc.*, 484 B.R. at 227 ("The Minority's expectations were not entirely fixed on the petition date, as the Minority argues. . . . [A]t that instant in time the Minority had mixed debt and equity expectations . . . .").

### b. *American Wagering* and the Promissory Note Line of Cases Relied Upon by the Minority are Materially Distinguishable

The Bankruptcy Court initially held that the cases the Minority relies upon are materially distinguishable from the case at bar and at odds with Ninth Circuit precedent. *In re Orange Cnty. Nursery, Inc.*, 479 B.R. at 869-70. This Court agrees.

First, in *American Wagering*, the Ninth Circuit held that a consultant, who by contract was to be paid a percentage of his employer's stock value, held a claim that was not subject to Section 510(b). 493 F.3d at 1073. In holding that Section 510(b) did not apply, the Ninth Circuit reasoned that a state court judgment in his favor "only gave him the monetary value of the shares of stock, not the stock itself." 493 F.3d at 1071. The *American Wagering* court distinguished *In re Alta+Cast*, 301 B.R. 150 (Bankr. D. Del.

2003), a case analogous to the facts here, by noting that the consultant "never" owned any stock and never attempted to "recover an investment loss." *See* 493 F.3d at 1073.

The Minority also relies on several cases involving promissory notes. In *In re Swift Instruments, Inc.*, No. 11-1426, 2012 WL 762833 (B.A.P. 9th Cir. Mar. 8, 2012), the claimants held promissory notes issued three years before the debtor filed its bankruptcy petition. The BAP held that Section 510(b) did not require subordination of the note-holder's claims because they possessed the risk and return expectations of creditors given that the notes were simply debt instruments. *Id.* at *8. The BAP observed that "no claim for the value of any stock or stock warrants that might fall within the ambit of § 510(b) was ever filed." *Id.* at *8.

Here, unlike in *Swift*—and as the Bankruptcy Court's decision recognized—the interest held by the Minority is not like that of a promissory note holder. *In re Orange Cnty. Nursery, Inc.*, 484 B.R. at 227. On the date of OCN's petition, the Minority held "mixed debt and equity expectations," unlike the holders of a promissory note.[9] *Id.*

Finally, the Minority also relies on *In re Cybersight LLC*, Nos. 02-11033, 04-112, 2004 WL 2713098 (D. Del. Nov. 17, 2004). There, an LLC agreement obligated the LLC to purchase a member's interest when his employment was terminated. *Id.* at *1. When the LLC failed to do so, an arbitrator fixed an amount due to the employee under

---

[9] The bankruptcy court reasoned that despite the Minority's "equity expectation" in OCN's stock, if the OCN did not pay by the deadline, the Minority "would in all likelihood not participate in the Debtor's profits if there were profits to participate in." *In re Orange Cnty. Nursery, Inc.*, 484 B.R. at 227. It opined that if OCN's stock performed badly, it would likely give the Minority its pro rata share, but if it did well, it would pay the Minority by the deadline. *Id.* Despite these predictions, the Minority still held stock in OCN and was entitled to its value upon liquidation, as this Court previously held, on the date of the petition. There is no indication that this value is fixed or was capped or otherwise prevented from sharing in any upswing. Moreover, the Minority admits that its claim is based on the "value of OCN on a going-concern basis as of the Petition Date, multiplied by the number of shares held by the Minority." (Appellees' Response Br. at 10:23-25.) In sum, there is no indication that the Minority had stopped being able to share in the value of any potential upswing in OCN's stock by the date of the petition, as a promissory note holder would.

the agreement, and a state court confirmed the judgment. *Id.* The Court held that a claimant's LLC interest was not subject to mandatory subordination under Section 510(b) because the claim was converted into a debt obligation when the claimant obtained a pre-petition judgment against the debtor. *Id.* at *4. The Court reasoned that there was "no material difference between the exchange of a promissory note for equity interest" and the judgment that the claimant received. *Id.* This was because "[i]n both instances, the claimants, pre-petition, were no longer able to participate in the benefits and risks associated with being equity holders of the debtors, and therefore, Section 510(b) did not require subordination." *Id.* Here, by virtue of the Superior Court judgment, the Minority still retains an interest in the equity value of its shares upon dissolution.

The cases relied upon by the Minority are distinguishable from the facts of the case at bar.

In sum, considering the text of Section 510(b) and its policies, Ninth Circuit precedent, and other persuasive authority, the Court concludes that the Minority's claim arises from the purchase or sale of securities within the meaning of Section 510(b).

**B.      Because Section 510(b) Applies, Subordination is Mandatory**

Under Section 510(b), if a claim for damages arises from the purchase or sale of securities, then it "*shall* be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, *except that if such security is common stock, such claim has the same priority as common stock*."

The Bankruptcy Court's November 15, 2012 order rejected every argument by the Minority that its claims should not be subordinated, except its argument that policy rationales undergirding Section 510(b) did not apply. *In re Orange Cnty. Nursery, Inc.*, 484 B.R. at 225-27. The Bankruptcy Court's order appears to hinge on policy considerations alone, noting that "[t]hese rationales are truly the important question at issue." *Id.* at 227. Key to the Bankruptcy Court's decision was that the Minority did not

contest subordination below creditors. Instead, it simply argued that its claim should not be subordinated to the level of common stock. Therefore, the Bankruptcy Court reasoned that the dual rationales for Section 510(b), which protect creditors, did not apply. For the reasons stated above, the Court concludes that Section 510(b) does apply, based on the text, precedent, and policy.

Furthermore, Section 510(b) is mandatory. *Betacom*, 240 F.3d at 828. If a claim falls within its ambit, then the claim "shall . . . have the same priority as common stock." 11 U.S.C. § 510(b). The text of Section 510(b) does not create an exception for voluntary subordination below creditors, nor does the Minority point to any cases suggesting an exception. To permit the Minority to carve out an exception to the plain text of Section 510(b) would effectively allow all shareholders with a claim falling under Section 510(b) to place their right to payment above that of common stock by agreeing to subordinate their claim to those of creditors. If Congress had intended to allow defrauded shareholders to be placed above common stock—a class of shareholders that they were considering when they enacted the legislation—they could have done so.[10] To permit such an exception would contravene the language of the statute, i.e, "such claim has the same priority as common stock." 11 U.S.C. § 510(b).

The Bankruptcy Court elected to follow what it referred to as the "Promissory Note" line of cases, as opposed to the approach of the BAP in *Tristar*, noting that these were "two choices of equal appeal," but stating that it "believes it should elect the

---

[10] "Section 510(b) serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets. The principles behind corporate and bankruptcy laws generally do not favor shifting the risk of loss from shareholders to creditors, even if the shareholders are blameless. One of the primary purposes of Section 510(b), therefore, is to prevent disappointed shareholders, sometimes the victims of corporate fraud, from recouping their investment in parity with unsecured creditors." *In re Am. Wagering, Inc.*, 493 F.3d at 1071-72.

alternative that eliminates a substantial amount of needless complexity." *In re Orange Cnty. Nursery, Inc.*, 2013 WL 3776320, *8. Although the Court shares the Bankruptcy Court's concern regarding the potential practical consequences of this ruling, it is constrained by the controlling precedents to find that subordination of the Minority's claim under Section 510(b) is mandatory.

## IV.
## CONCLUSION

In light of the foregoing, the judgment of the Bankruptcy Court is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

DATED: September 19, 2014

```
                                    _____
                                         DOLLY M. GEE
                                    UNITED STATES DISTRICT JUDGE
```

cc: Bankruptcy Court